673 S.E.2d 461

**Lou Anne PACK, Respondent,**

v.

**South Carolina DEPARTMENT OF TRANSPORTATION, Employer and State Accident Fund, Carrier, Appellants.**

**No. 4488.**

Court of Appeals of South Carolina.

Heard Nov. 18, 2008.
Decided Jan. 27, 2009.

Cynthia Burns Polk, of Columbia, T. McRoy Shelley, III, of Columbia, for Appellants.

Steven Eric Goldberg, of Charleston, for Respondent.

WILLIAMS, J.:

In this worker's compensation action, Appellants contest (a) the circuit court's decision to reverse the Workers' Compensation Commission's holding that Pack suffered no brain injury, and (b) the circuit court's decision to affirm the Workers' Compensation Commission's holding that Respondent is entitled to benefits for respiratory and psychological injury. We reverse in part, affirm in part, and remand.

## FACTS/PROCEDURAL HISTORY

Lou Anne Pack (Pack) began working for the South Carolina Department of Transportation (the DOT) in 2000 as an assistant with the asphalt crew. Pack later began working with the roadside herbicide application crew. Her duties on the roadside crew included operating a truck equipped with a herbicide sprayer. During August 2002, the air conditioning in Pack's work vehicle was not working properly and, as a result, she began spraying herbicides from her truck with the windows open. On or about August 18, 2002, an amount of liquid herbicide "overflowed" from the tank on her truck and she was exposed to the fumes. Soon after this exposure, she collapsed next to her truck. Pack was admitted to Providence Hospital on August 30, 2002, with a diagnosis of "[p]ossible toxic reaction to weed spray, naphthalene." Her discharge summary noted her "renal and hepatic functions were normal,

and her neurological symptoms and signs cleared within 24–48 hours" and "there was no slurring of speech."

Appellants commenced payment of weekly temporary total benefits but only paid twenty-seven dollars ($27.00) for medical treatment. Pack's counsel requested additional medical evaluation and treatment, but Appellants refused. Pack sought medical treatment from numerous physicians at her own expense and began seeing Dr. Allan Lieberman, an environmental specialist, and L. Randolph Waid, Ph.D., a neuropsychologist, in May 2003.

On January 26, 2005, Appellants filed a WCC Form No. 21 Stop Payment application. After a hearing was scheduled and the parties exchanged documents for admission, however, Appellants withdrew their Stop Payment application. Immediately after this withdrawal, Pack filed a WCC Form 50, seeking either an award of permanency for her brain, respiratory, and psychological injuries or, in the alternative, an award finding she had not reached maximum medical improvement and was entitled to reimbursement for and additional treatment by Dr. Lieberman and Dr. Waid. Pack alleged injury to her "whole body, respiratory [system], brain[,] allergen, [and] chemical sensitivity" in connection with the August 18, 2002 incident. Appellants filed a WCC Form 51, in which they admitted Pack was exposed to herbicide and may have suffered transient effects but denied any permanent injury.

The Single Commissioner ruled Pack had not reached maximum medical improvement, that she had injury "to her respiratory system, brain with psychological overlay ... when she was exposed multiple times to pesticides and herbicides," and that Appellants should pay for continued treatment. The Appellate Panel of the Workers' Compensation Commission (the Commission), in a 2–1 decision filed June 19, 2006, affirmed the Single Commissioner's decision with amendments. The majority held Pack's injuries were limited to "her respiratory system with psychological overlay" but did not include the brain.

The dissenting commissioner, Commissioner Bardner, held: there was no evidence of any respiratory injury, there was no objective evidence of any brain or "toxic exposure" injury, Pack had reached maximum medical improvement shortly

after exposure to herbicide, and Pack had no residual permanency. In support of her position, Commissioner Bardner noted:

(a) [Pack's] discharge summary from 2002 notes that her "renal and hepatic functions were normal," her "neurological symptoms cleared within 24–48 hours," and "there was no slurring of speech;" (b) [Pack's] claim appears to have as its basis her Internet research dealing with acephate; however [Pack's] plasma and blood levels showed no signs of insecticide exposure; further, certified toxicologists state that any symptoms from which [Pack] suffered were not related to acephate; (c) Dr. Waid is not a medical doctor, and based his findings on tests which show that [Pack] **acts** as if she has a toxic exposure injury; (d) Dr. Lieberman simply recites the purported exposure to organophosphates which no objective test has shown; (e) at most, [Pack] has had a psychosomatic experience from her Internet research; at worst, [Pack] is using the worker's compensation system for purposes of secondary gain; (f) all the **objective** medical evidence, ... which describes [Pack] as very articulate and organized; that she has brought in a book with multiple tabs, and which summarizes medical opinions from various physicians; and that she speaks with fluency regarding the chemicals to which she was reportedly exposed.

(emphasis in original).

Both parties timely appealed to the circuit court. Pack argued the Commission erred in denying compensability for her physical brain injury, but the Commission did not err in affirming compensability for respiratory and psychological injuries. Appellants argued the denial as to Pack's brain injury was proper because it was supported by substantial evidence. Appellants further contended the dissenting opinion was correct and the majority opinion awarding compensability for respiratory and psychological injuries was not supported by substantial evidence.

As to the brain injury, the circuit court reversed the Commission, holding "the only evidence contained in the record supports the original finding that [Pack] sustained an injury to her brain" and "[t]he exclusion of the brain without explanation is inconsistent with the medical treatment and evaluation

the Commission ordered." As to respiratory and psychological injury, the circuit court affirmed. This appeal follows.

## STANDARD OF REVIEW

The Administrative Procedures Act applies to appeals from decisions of the Commission. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). The Commission is the ultimate fact finder in Workers' Compensation cases and is not bound by the Single Commissioner's findings of fact. *Etheredge v. Monsanto Co.,* 349 S.C. 451, 454, 562 S.E.2d 679, 681 (Ct.App.2002). The findings of the Commission are presumed correct and will be set aside only if unsupported by substantial evidence. Lark, 276 S.C. at 135, 276 S.E.2d at 306. "Substantial evidence" is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action. *Taylor v. S.C. Dep't of Motor Vehicles,* 368 S.C. 33, 36, 627 S.E.2d 751, 752 (Ct.App.2006).

## LAW & ANALYSIS

### 1. Pack's Estoppel Argument

As an initial matter, Pack argues Appellants should be estopped from denying that she has suffered a brain injury because in their Form 51, Appellants "admit [Pack] was exposed to herbicide and may have suffered transient effects." However, Pack has cited no legal authority to support the argument that this amounts to a judicially binding admission of Pack's alleged injury. As such, this argument is conclusory, and such arguments are deemed abandoned on appeal. *See Mulherin–Howell v. Cobb,* 362 S.C. 588, 600, 608 S.E.2d 587, 593–94 (Ct.App.2005) (finding party abandoned an issue on appeal due to failure to cite any supporting authority and making only conclusory arguments).

### 2. Brain Injury

Appellants argue the circuit court erred in reversing the Commission's decision that Pack has not suffered a brain

injury because (a) the circuit court improperly made its own factual determination regarding the brain injury, and (b) substantial evidence supports the Commission's denial of the brain injury claim. Because we agree with Appellants on the first point, we reverse the circuit court's ruling as to the brain injury. However, we do not affirm the Commission's original ruling because the Commission's finding that Pack suffered injuries to the respiratory system with psychological overlay, standing alone, does not constitute a sufficient finding to warrant denial of the brain injury. Instead, we remand the issue to the Commission to make further findings of fact as to the brain injury.

In this case, the Commission disagreed with the Single Commissioner's finding that Pack had suffered a brain injury. Specifically, the Commission held Pack's only injuries were "to her respiratory system, with psychological overlay," whereas the Single Commissioner included the brain. The circuit court noted this difference of opinion between the Single Commissioner and the Commission and characterized it as a failure by the Commission to make an essential finding of fact, such that remand would normally be appropriate. The circuit court found:

> The Decision and Order of the [Commission] included neither a finding of fact nor conclusion of law explaining why the brain was removed as an affected body part. Remand is proper where the Commission has failed to make essential findings of fact, or the findings are so indefinite or general as to afford no reasonable basis upon which the appellate court can determine whether the findings are supported by the evidence and whether the law has been properly applied to the findings.

(internal citations omitted).

The circuit court went on, however, to hold that remand was not appropriate in this case because the evidence in the record would **only** support a finding in favor of Pack on the issue of brain injury. The circuit court stated:

> [H]owever, where the evidence is susceptible of but one reasonable inference, the question becomes a matter of law for the appellate court rather than the [Commission]. The **only medical evidence** contained in the record supports the

' [Single Commissioner's] original finding that [Pack] sustained an injury to the brain.

(emphasis added) (internal citations omitted).

This was error for two reasons. First, the latter holding was erroneous because questions of fact are decided solely by the Commission, and the court reviewing the Commission's decision lacks authority to determine factual issues, except in jurisdictional matters. *Fox v. Newberry County Mem'l Hosp.*, 319 S.C. 278, 280, 461 S.E.2d 392, 394 (1995). Although the circuit court correctly stated that when the evidence is susceptible of but one reasonable inference, the question becomes a matter of law, *Mullinax v. Winn Dixie Stores, Inc.*, 318 S.C. 431, 437, 458 S.E.2d 76, 80 (Ct.App.1995), the circuit court erred in concluding there was no medical evidence in the record that would negate Pack's claim of a brain injury.

The record is replete with such evidence. Dr. Bill Simpson, a family medicine specialist at the Medical University of South Carolina, stated, "[Pack's] neurological examination is grossly intact." Dr. Waid stated Pack was "[q]uite talkative during the evaluation process," that her "[c]onversational speech was prosodic, fluent, of normal rate and tone" and she "did not demonstrate any word finding difficulties in conversational speech." Dr. Gordon Early, a specialist in occupational medicine, noted blood tests conducted soon after Pack's last alleged exposure revealed no evidence of any exposure to insecticide. Two board certified toxicologists offered their opinions that there was no evidence of any toxic exposure to insecticide and that, at most, Pack had transient symptoms from herbicide exposure. Dr. Robert M. Bennett, a forensic toxicologist, reported that any biochemical changes that occur due to the toxicity of acephate are relatively short-lived, typically clearing in a matter of days. Dr. Bennet further stated, "No chronic, permanent or lasting organic biochemical somatic or neurological changes have been shown in the medical literature" and that "there are no reported cases of long term health effects in humans due to acephate or its formulations." Because the record contains conflicting evidence on the question of whether Pack suffered a brain injury, it was error for the circuit court to hold that the only medical evidence in the record supports the Single Commissioner's original finding

that Pack sustained an injury to the brain. For this reason, the circuit court's holding is reversed.

Second, the circuit court erred to the extent that it held it was improper for the Commission to disagree with the findings of the Single Commissioner. The Commission is the ultimate fact finder in Workers' Compensation cases and is not bound by the Single Commissioner's findings of fact. *Gadson v. Mikasa Corp.*, 368 S.C. 214, 221, 628 S.E.2d 262, 266 (Ct.App.2006). Pursuant to S.C.Code Ann. § 42–17–50 (Supp. 2007), the Commission shall weigh the evidence as presented at the initial hearing and, if good grounds are shown, make its own findings of fact and reach its own conclusions of law consistent or inconsistent with those of the Single Commissioner. *Lowe v. Am–Can Transp. Servs. Inc.*, 283 S.C. 534, 537, 324 S.E.2d 87, 89 (Ct.App.1984); *see also Green v. Raybestos–Manhattan, Inc.*, 250 S.C. 58, 64, 156 S.E.2d 318, 321 (1967) (holding although it is logical for the Commission to give weight to the Single Commissioner's opinion, the Commission may disagree with his findings based on the credibility of witnesses).

In this case, the mere fact that the Commission disagreed with the Single Commissioner did not, by itself, constitute a failure to make an essential finding of fact. *See Lowe*, 283 S.C. at 537, 324 S.E.2d at 89 (holding the Commission had the power to make its own findings consistent with or inconsistent with those of the Single Commissioner whether or not the Single Commissioner's holdings were based on competent substantial evidence and whether or not they were based on credibility of witnesses he had personally observed). Rather, the Commission's error was in its failure to explain its disagreement—i.e., its failure to explain exactly why it denied Pack's claim of brain injury. The absence of any findings to support the Commission's denial leaves this Court no way of evaluating the reasoning behind the Commission's decision. We, therefore, remand the issue to the Commission to make further findings to support its decision as to Pack's claim of brain injury. *See Fox*, 319 S.C. at 280, 461 S.E.2d at 394 (holding when an administrative agency acts without first making the proper factual findings required by law, the proper

procedure is to remand the case and allow the agency the opportunity to make those findings).

### 3. Respiratory and Psychological Overlay

The Commission ruled, and the circuit court affirmed, that Pack suffered both respiratory and psychological injuries. Appellants argue the circuit court erred in affirming the Commission because (a) substantial evidence does not support the respiratory injury claim, and (b) the psychological injury claim does not meet the legal standard for compensability. We agree with the circuit court and the Commission that Pack's claim of injury to her respiratory system is supported by substantial evidence. Therefore, we affirm the circuit court's holding as to that issue. However, we remand the issue of psychological injury to the Commission for more definite factual findings of a causal connection between Pack's physical injuries, either brain or respiratory, and her psychological injuries.

### a) Respiratory Injury

Appellants argue the circuit court erred in affirming the Commission's decision that Pack suffered an injury to her respiratory system because substantial evidence does not support a finding of a continuing respiratory injury. We disagree.

"Substantial evidence" is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the same conclusion as the Commission. *Taylor*, 368 S.C. at 36, 627 S.E.2d at 752. Where there are conflicts in the evidence over a factual issue, the findings of the Commission are conclusive. *Rogers v. Kunja Knitting Mills, Inc.*, 312 S.C. 377, 380, 440 S.E.2d 401, 403 (Ct.App.1994). The Commission need not accept or believe medical or other expert testimony, even when it is unanimous, uncontroverted, or uncontradicted. 100A C.J.S. Workers' Compensation § 1023 (2000). Thus, even sharply contradicted evidence of injury can constitute substantial evidence for purposes of review. *See, e.g., Williams v. S.C. Dep't. of Mental Retardation*, 308 S.C. 438, 439–40, 418 S.E.2d

555, 556 (Ct.App.1992) (holding substantial evidence supported Commission's finding that claimant suffered a permanent ten percent impairment to her back, despite the fact that all of the experts, except claimant's family physician, agreed after close physical examinations that claimant had no permanent partial impairment).

■ While the evidence in the record tending to support Pack's alleged respiratory injury is far from overwhelming, the record does contain substantial evidence to support the Commission's conclusion Pack has suffered a respiratory injury. Dr. Lieberman listed among his diagnoses "excessive bronchial secretions[,] ... wheezing[,] ... [and] bronco spasms." Dr. Stewart, a rehabilitation counselor, concluded Pack "sustained significant work-related injuries to her brain (cognitive dysfunction) and lungs/breathing passages." Dr. Brian S. Dantzler, an allergist, diagnosed Pack with asthma "based upon a combination of clinical history of coughing, wheezing, or episodic difficulty breathing." Considering the record as a whole, this evidence could allow reasonable minds to conclude Pack suffered respiratory injury. *See Taylor*, 368 S.C. at 36, 627 S.E.2d at 752 (holding evidence is substantial if, considering the record as a whole, it "would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action[ ]"). Because the evidence is conflicting on this issue, the circuit court did not err in affirming the Commission's holding. *See Rogers*, 312 S.C. at 381, 440 S.E.2d at 403 (holding the circuit court's reversal of the Commission was error because although the evidence conflicted, the Commission's findings were supported by substantial evidence).

### b) Psychological Injury

■ Appellants argue the circuit court erred in affirming the Commission's decision that Pack suffered a psychological injury because Pack's claim for psychological injury does not meet the requirements of S.C.Code Ann. § 42–1–160 (Supp. 2007). Although we agree with Pack that substantial evidence supports the Commission's finding that she suffered an injury to her respiratory system, we do not believe the Commission made adequate findings of fact establishing a causal connection between Pack's physical injuries and her psychological

injuries. We, therefore, remand the issue to the Commission for more specific findings of a causal connection.

 Claims for psychological injury are compensable only if the claimant proves by a preponderance of evidence they are caused by physical injury or by extraordinary and unusual conditions of employment. *Frame v. Resort Servs. Inc.*, 357 S.C. 520, 528, 593 S.E.2d 491, 495 (Ct.App.2004). In this case, there is no contention Pack suffered extraordinary and unusual conditions of employment. Therefore, for Pack's psychological injuries to be compensable, Pack must prove a physical injury caused her psychological injury. *Estridge v. Joslyn Clark Controls, Inc.*, 325 S.C. 532, 538, 482 S.E.2d 577, 580 (Ct.App.1997).

There are two alleged physical injuries in this case: brain and respiratory. From the record, Pack's position appears to be her alleged brain injury, not her respiratory injury, is what caused her psychological injuries. Indeed, the Single Commissioner grouped the psychological injuries with the brain injuries, describing Pack's injuries as "respiratory [and] brain with psychological overlay," and "brain accompanied with psychological overlay[ ]"). Thus, a finding that Pack has psychological injuries would seem to be contingent upon the Commission finding she had brain injuries. It was, therefore, puzzling that the Commission found psychological injuries while denying the brain injury. In doing so, the circuit court implicitly held that Pack's respiratory injuries caused the psychological injuries. However, the circuit court made no findings of fact to support this.

 The task of an appellate court is to inquire whether the Commission's findings are supported by substantial evidence. *Lark*, 276 S.C. at 136, 276 S.E.2d at 307. However, without clear findings of fact, this Court cannot evaluate the decision of the Commission under the substantial evidence standard. *See Drake v. Raybestos–Manhattan, Inc.*, 241 S.C. 116, 123, 127 S.E.2d 288, 292 (1962) (holding remand is proper where Commission's order affords no reasonable basis upon which the appellate court can determine whether the findings of fact are supported by the evidence and whether the law has been properly applied to those findings). Here, there are inadequate findings as to what caused Pack's psychological

injuries. We, therefore, remand this issue to the Commission to make further findings as to the causal link between Pack's physical injuries, either brain or respiratory, and her psychological injuries.

## CONCLUSION

As to the brain injury, the circuit court's reversal of the Commission is reversed, and the issue is remanded to the Commission for further findings on brain injury.

As to the respiratory injury, the circuit court's ruling is affirmed.

As to psychological injuries, the issue is remanded to the Commission for more specific fact-finding on the causal link between Pack's physical injuries and her psychological injuries.

PIEPER and GEATHERS, JJ., concur.