627 S.E.2d 751

**Suchart TAYLOR, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF
MOTOR VEHICLES, Appellant.**

**No. 4089.**

Court of Appeals of South Carolina.

Submitted Jan. 1, 2006.
Decided Jan. 20, 2006.
Refiled Feb. 27, 2006.

34

Frank L. Valenta, Jr., and Kelli Gregg Maddox, of Blythe-wood, for Appellant.

Michael Sean O'Neal, of North Charleston, for Respondent.

PER CURIAM:

The South Carolina Department of Motor Vehicles (the Department) appeals the trial court's order reversing the administrative hearing officer's order sustaining the suspension of Suchart Taylor's driver's license. We reverse.

## FACTS

On September 1, 2004, Officer Hamm of the South Carolina Highway Patrol responded to a report of a vehicle accident on Interstate 26 in Berkley County. When Officer Hamm arrived at the scene of the accident, paramedics were treating Taylor for his injuries. During a break in the treatment, Officer Hamm approached Taylor's vehicle. As he approached, he smelled an odor of beer emanating from the area around Taylor. Officer Hamm arrested Taylor for driving under the influence of alcohol (DUI). Due to the extent of Taylor's injuries, Taylor was transported to the hospital.

At the hospital, Officer Hamm determined Taylor could not take a breath test due to the heavy mouth injuries he sustained from the accident. Officer Hamm requested a blood sample from Taylor. Taylor refused to provide a blood sample, and refused to sign the implied consent form. Because Taylor refused to sign the form, Officer Hamm read it out loud, but did not provide Taylor a tangible copy. Thus, Taylor heard his implied consent rights but neither read nor signed the implied consent form.

Because Taylor refused chemical testing, Officer Hamm issued him a notice of suspension of his driver's license. Shortly thereafter, Taylor requested a hearing to challenge the suspension of his license. On October 13, 2004, the hearing officer sustained the suspension of Taylor's license. Taylor then petitioned the trial court to review the administrative hearing officer's order. The trial court heard Taylor's petition and reversed the hearing officer's order. The Department now appeals the trial court's order.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act establishes the standard of review for an appeal from an order

of an administrative agency. Section 1–23–380(A)(6) of the South Carolina Code (2005) provides:

The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(a) in violation of constitutional or statutory provisions. . . .

"The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence." *S.C. Dep't of Motor Vehicles v. Nelson,* 364 S.C. 514, 519, 613 S.E.2d 544, 547 (2005). "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action." *Id.* "In reviewing a final decision of an administrative agency, the circuit court essentially sits as an appellate court to review alleged errors committed by the agency." *Id.*

## DISCUSSION

The Department argues the trial court erred in reversing the order of the administrative hearing officer. We agree.

■■ In South Carolina, operating a motor vehicle is a privilege of the State, not a right of the individual.

The license to operate a motor vehicle upon the public highways of this state is not a property right, but is a mere privilege subject to reasonable regulations under the police power in the interest of the public safety and welfare. Such privilege is always subject to revocation or suspension for any cause relating to public safety. However, the privilege cannot be revoked arbitrarily or capriciously.

*Sponar v. S.C. Dep't of Pub. Safety,* 361 S.C. 35, 39, 603 S.E.2d 412, 415 (Ct.App.2004). As part of this privilege, individuals operating motor vehicles implicitly consent to chemical tests of their breath, blood, or urine to determine whether they are

driving while under the influence of drugs or alcohol. S.C.Code Ann. § 56–5–2950 (Supp.2004).

█ The implied consent laws of this State attempt to balance the interest of the State in maintaining safe highways with the interest of the individual in maintaining personal autonomy free from arbitrary or overbearing State action. The South Carolina Supreme Court articulated this policy in *S.C. Dep't of Motor Vehicles v. Nelson,* 364 S.C. 514, 521, 613 S.E.2d 544, 548 (2005), when the court stated:

> The implied consent laws are driven by public policy considerations. The State has a strong interest in maintaining safe highways and roads. One way to accomplish this goal is to enact laws directed at minimizing drunk driving.

Section 56–5–2950 of the South Carolina Code provides:

> No tests may be administered or samples obtained unless the person has been informed in writing that:
>
> (1) he does not have to take the test or give the samples, but that his privilege to drive must be suspended or denied for at least ninety days if he refuses to submit to the tests and that his refusal may be used against him in court;
>
> (2) his privilege to drive must be suspended for at least thirty days if he takes the tests or gives the samples and has an alcohol concentration of fifteen one-hundredths of one percent or more;
>
> (3) he has the right to have a qualified person of his own choosing conduct addition independent tests at his expense;
>
> (4) he has the right to request an administrative hearing within thirty days of the issuance of the notice of suspension; and
>
> (5) if he does not request an administrative hearing or if his suspension is upheld at the administrative hearing, he must enroll in an Alcohol and Drug Safety Action Program.

The aforementioned administrative hearing must be held within thirty days after request for the hearing is received. S.C.Code Ann. § 56–5–2951(F) (Supp.2004). By statute, the "scope of the hearing must be limited to whether the person: (1) was lawfully arrested or detained; (2) was advised in writing of the rights enumerated in Section 56–5–2950; [or] (3)

refused to submit to a test pursuant to Section 56–5–2950 . . . ." S.C.Code Ann. § 56–5–2951(F).

The Department argues the trial court erred in reversing the administrative hearing officer's order because Taylor did not demonstrate how he was prejudiced by the fact that he did not receive a copy of the implied consent form from Officer Hamm. We agree.

In *State v. Huntley*, 349 S.C. 1, 6, 562 S.E.2d 472, 474 (2002), the South Carolina Supreme Court reversed the trial court and held that the results of a breathalyzer test should not have been suppressed for a violation of section 56–5–2950 because the defendant was not prejudiced by the violation. The trial court suppressed the breathalyzer test results because the breathalyzer operator tested the breathalyzer machine with a simulator test solution containing an alcohol level of .10 percent rather than the .08 percent mandated by statute. The supreme court reasoned that because the test merely determined the reliability of the breathalyzer machine's results it was "irrelevant whether the simulator test [was operated] using an alcohol level of .10 or .08 percent." *Id.* The supreme court concluded, "Even if the breathalyzer operator did not use the simulator test solution at the alcohol concentration required by [section 56–5–2950], [the defendant] was not prejudiced." *Id.* Thus, the supreme court reversed the suppression of the breathalyzer test results because the defendant was not prejudiced by the statutory violation committed by the breathalyzer operator. Consequently, the *Huntley* decision dictates that a violation of section 56–5–2950 without resulting prejudice will not lead to a suppression of the evidence obtained pursuant to this section.

Taylor argues he was not informed of the implied consent rights in writing as provided by section 56–5–2950. Taylor does not argue that he did not receive the implied consent rights, or that he would have provided a blood test if he had received the implied consent rights in writing. Therefore, Taylor was not prejudiced by the fact that Officer Hamm read the implied consent rights out loud. Because Taylor was not prejudiced, the trial court erred in reversing the administrative hearing officer's order.

Accordingly, the order of the trial court is
**REVERSED.**

KITTREDGE, WILLIAMS, JJ., and CURETON, A.J.,
concur.